IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Debra McMurry,                          )      Civil Action No. 8:12-cv-01792-TMC-JDA
                        Plaintiff,      )
                                        )
        vs.                             )      **REPORT AND RECOMMENDATION**
                                        )      **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,[1]                   )
Commissioner of Social Security,        )
                                        )
                        Defendant.      )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of Defendant Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income

("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the

Commissioner be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

        In April 2008, Plaintiff filed an application for DIB, alleging an onset of disability date

of October 15, 2005.  [R. 143–47.]  In August 2009, Plaintiff filed an application for SSI,

---

        [1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

        [2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

again alleging an onset date of October 15, 2005. [*See* R. 30.[3]] Plaintiff's DIB claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 81–87, 90–91.] On February 17, 2009, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 92–94 ], and on August 12, 2010, ALJ Linda R. Haack conducted a de novo hearing on Plaintiff's claims [R. 58–79].

The ALJ issued a decision on August 27, 2010, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 30–48.] At Step 1,[4] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2010 and had not engaged in substantial gainful activity since October 15, 2005, her alleged onset date. [R. 32, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had severe impairments of hypopituitary syndrome, fatigue, major depressive disorder, anxiety, obesity, sleep apnea, low back pain, degenerative joint disease of the left knee, and asthma. [R. 32, Finding 3.] The ALJ also found that Plaintiff had non-severe impairments of gastro-esophageal reflux disease, irritable bowel syndrome, diarrhea, menopause, heart problems, rhinitis, skin irritation, vision problems, incontinence, and headaches. [R. 32–33.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 35, Finding 4.] The ALJ specifically considered Listings 1.0, 3.0, 4.0, and 12.04. [R. 35–37.]

---

[3] The record before the Court does not contain any of the paperwork associated with Plaintiff's SSI claim. However, the Court can discern that Plaintiff filed a SSI claim that was denied. [*See* R. 30.]

[4] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some additional limitations. Specifically, claimant can sit 6 hours in [an] 8-hour day with normal breaks. She can stand and walk 6 hours in an 8-hour day up to normal breaks but may have to sit more frequently. She can lift 20 pounds occasionally. She can lift 10 pounds frequently. Claimant can push and pull within the weight limitations provided. She should avoid climbing ropes, ladders, and scaffolds. She otherwise can perform postural activities occasionally. Claimant should avoid concentrated exposure to dusts, gases, fumes, and poor ventilation. She should work in a stable environment, meaning that sudden and unexpected changes are not normal. Claimant should avoid more than casual interaction with the general public and jobs requiring cooperative effort such as teamwork. She can perform simple, routine, and repetitive tasks.

[R. 37, Finding 5 (footnotes omitted).] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work. [R. 46, Finding 6.] However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 46, Finding 10.] Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined by the Act, from October 15, 2005, her alleged onset date, through the date of the ALJ's decision. [R. 47, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 26], but on May 26, 2011, the Council declined review [R. 14–16]. On December 21, 2011, the Appeals Council set aside its earlier denial to consider additional information but, after considering the additional information, again denied review. [R. 9–13.] Plaintiff filed this action for judicial review on June 29, 2012. [Doc. 1.]

3

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by (1) failing to adequately consider the cumulative effect of Plaintiff's impairments on her ability to work [Doc. 18 at 20–22; Doc. 22 at 1–9], and (2) improperly speculating and making medical conclusions without the help of a medical expert [Doc. 18 at 22–25; Doc. 22 at 9–13].  Relying on *Meyer v. Astrue*, 662 F.2d 700 (4th Cir. 2011), Plaintiff also alleges the Appeals Council erred by failing to weigh new and material evidence that would affect the findings of the ALJ.  [Doc. 18 at 25–27; Doc. 22 at 13–15.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because (1) the ALJ's decision demonstrates she adequately considered the combined effects of Plaintiff's impairments [Doc. 20 at 16–20], and (2) the RFC determination is an administrative determination rather than a medical determination, and therefore, it was the province of the ALJ to assess Plaintiff's RFC using all evidence in the record [*id.* at 20–23].  The Commissioner also contends the Appeals Council did not err in declining review because the additional evidence presented was consistent with the evidence considered by the ALJ and does not undermine the substantial evidence supporting the ALJ's decision.  [*Id.* at 23–25.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to

4

support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,*

611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its

reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

7

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g., Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.   *Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).   If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.   *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.   *See id.* §§ 404.1521, 416.921.   When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.   42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).   The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").   Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.   *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").   If the ALJ finds a combination of impairments to be severe, "the combined

10

impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.     *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.     *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden,

the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

(the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

primarily from an exertional impairment, without significant nonexertional factors.[8]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

claimant is not disabled, when the case is remanded it will be incumbent upon the

[Commissioner] to prove by expert vocational testimony that despite the combination of

exertional and nonexertional impairments, the claimant retains the ability to perform

specific jobs which exist in the national economy.").  The purpose of using a vocational

expert is "to assist the ALJ in determining whether there is work available in the national

economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the

vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

13

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

14

IV.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

15

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

16

> of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*,

17

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Combined Effect of Impairments**

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider the combined effect of Plaintiff's mental and physical impairments.  [Doc. 18 at 20–22; Doc. 22 at 1–9.]  Plaintiff contends that, while the ALJ states she considered the combination of Plaintiff's obesity on the "musculoskeletal, respiratory, and cardiovascular" body systems, she ignored the effect of Plaintiff's obesity on her mental impairments, even though the Administration's own rulings point out that obesity may cause or contribute to mental impairments.  [Doc. 18 at 20–21 (citing SSR 02-1p, 67 Fed. Reg. 57859-02, at *57862–63 (Sept. 12, 2002)).]  Plaintiff also argues the ALJ improperly fragmented the effect of Plaintiff's impairments and failed to adequately explain her evaluation of the combined effects of Plaintiff's impairments.  [*Id.* at 21–22 (citations omitted).]

As stated in the Act:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such

18

> impairment, if considered separately, would be of such
> severity.

42 U.S.C. § 423(d)(2)(B).  If an ALJ finds a claimant has a severe impairment or

combination of impairments, the ALJ must consider all of the claimant's impairments,

including non-severe impairments and the limitations imposed by all the claimant's

impairments, at the remaining steps of the sequential analysis.  *Id.*; SSR 96-8p, 61 Fed.

Reg. 34,474-01 (July 2, 1996).  Further, the ALJ must make specific and well-articulated

findings as to the effect of a combination of impairments when determining whether an

individual is disabled.  *Walker*, 889 F.2d at 50 ("As a corollary to th[e] rule [that the ALJ

must evaluate the combined effect of the claimant's impairments], the ALJ must adequately

explain his or her evaluation of the combined effects of the impairments." (citing

*Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985)).

### The ALJ's Decision

As stated, the ALJ determined Plaintiff had severe impairments of hypopituitary

syndrome, fatigue, major depressive disorder, anxiety, obesity, sleep apnea, low back pain,

degenerative joint disease of the left knee, and asthma.  [R. 32.]  The ALJ also found

Plaintiff had non-severe impairments of gastro-esophageal reflux disease, irritable bowel

syndrome, diarrhea, menopause, heart problems, rhinitis, skin irritation, vision problems,

incontinence, and headaches.  [*Id.*]  In determining whether Plaintiff's obesity met or

equaled a listed impairment, the ALJ considered the musculoskeletal, respiratory, and

cardiovascular body systems as set out in Listings 1.0, 3.0, and 4.0, respectively, as well

as guidance contained in those listings about the effects of obesity.  [R. 35.]  As a result,

the ALJ found Plaintiff's obesity, standing alone, was not medically equivalent to a listed

impairment and that evidence of record failed to show Plaintiff had an impairment that, in combination with obesity, met or equaled the requirements of a listing.  [R. 35.]  The ALJ concluded Plaintiff's "multiple impairments, including obesity, do not have effects which *in combination* are equivalent in severity to a listed impairment."  [*Id.* (emphasis added).]  The ALJ also determined Plaintiff's mental impairments did not satisfy Listing 12.04.  [R. 36.]

Further, in determining Plaintiff's RFC, the ALJ found Plaintiff did not receive much treatment for her obesity.  [R. 43.]  The ALJ acknowledged Plaintiff's report that "she isolated herself from friends because she was self-conscious about her weight."  [R. 39.]  The ALJ also noted that, while Plaintiff reported symptoms of memory and concentration difficulties, fatigue, depression, anxiety, and weight gain to her providers, her treatment records failed to show that she reported such symptoms with a frequency that would support a finding of disability.  [*Id.*]  Additionally, the ALJ noted Plaintiff's treatment notes do not reflect that she regularly reported limitations associated with these symptoms that would prevent her from performing work within her assigned RFC.  [R. 40.]  Further, the ALJ characterized Plaintiff's treatment by mental health professionals as "very sporadic" [R. 42], and the ALJ documented the psychological consultative examiner's opinion that, if it were not for Plaintiff's physical problems, she may not experience depression and anxiety [R. 46].   The ALJ ultimately concluded the evidence regarding Plaintiff's hypopituitarism, fatigue, obesity, low back pain, degenerative joint disease of the left knee, asthma, and mental health impairments supported a finding that she should be limited to light work with some additional limitations.  [R. 45.]

20

### *Analysis*

Upon review of the ALJ's decision, the Court is satisfied the ALJ considered the cumulative effect of Plaintiff's impairments, including her obesity, on her ability to work. SSR 02-1p makes clear the mere presence of obesity does not determine disability, but rather, the effect obesity has on a claimant's ability to function and perform work-related tasks determines whether the claimant is disabled. *See* SSR 02-1p, 67 Fed. Reg. 57859-02 (Sept. 12, 2002); *Gregory v. Comm'r of the Soc. Sec. Admin.*, No. 1:09-413-HMH-SVH, 2010 WL 3046991, at *10 (D.S.C. July 12, 2010). Here, the ALJ documented the limitations imposed by each of Plaintiff's impairments and their effect on Plaintiff's ability to function and perform work-related tasks. [*See* R. 37–46.] As noted, the ALJ acknowledged evidence that Plaintiff's obesity and physical limitations contributed to her mental impairments, but the ALJ also observed that the level of treatment Plaintiff received for her obesity and mental impairments suggested they were not disabling. [R. 39–40, 42, 46.] While Plaintiff is correct that the ALJ failed to comment on every instance in the record where it was noted that Plaintiff's obesity negatively impacted her mental health [*see* Doc. 18 at 21], Plaintiff has failed to demonstrate the combination of her impairments impacts her ability to work in a way that is more severe than that found by the ALJ. Further, Plaintiff has failed to demonstrate how any additional discussion by the ALJ could have produced a different result. Accordingly, the ALJ's decision with respect to her analysis of the combination of Plaintiff's impairments is supported by substantial evidence.

**Determining RFC Without a Medical Opinion Outlining Plaintiff's Limitations**

Plaintiff contends that "only by interpreting the raw medical data in the file could the ALJ have fashioned her RFC determination," and thus, the ALJ erred because an "ALJ cannot substitute his judgment for that of an expert." [Doc. 18 at 22.]  Specifically, Plaintiff argues,

> Here, no physician has offered an opinion regarding what limitation of function result from [Plaintiff's] multiple physical impairments.  While defense counsel will surely state that the ALJ made his determination based on all the evidence, including the ALJ's evaluation of [Plaintiff's] credibility, that cannot be so, because, lacking medical expertise, he only could have based that opinion on the lay portion of the evidence, because he is unqualified to determine limitations from the medical evidence, because that is not permitted.

[*Id.* at 24.]

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations.  RFC is an *administrative assessment* of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474-01, at 34,475 (July 2, 1996) (emphasis added) (internal citation and footnotes omitted).  Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments.  It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC. . . .

*Id.* at 34,476.  To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements.  *Id.* at 34,477.

### The ALJ's Decision

Here, in addition to discussing the details of Plaintiff's medical records and the other evidence of record [*see* R. 32–46], the ALJ noted Plaintiff's physicians had not imposed any restrictions upon Plaintiff relating to any condition [R. 40].  The ALJ also noted that Plaintiff's "reports of her own activities [we]re inconsistent with her allegations that her severe impairments impose disabling limitations." [R. 44.] Further, the ALJ stated she had considered the opinion evidence of record "in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p," and she noted there were no opinions from state agency medical consultants but there were opinions from state agency psychological consultants and a psychological consultative examiner.  [R. 45–46.] Finally, the ALJ summarized why she assessed Plaintiff with certain limitations:

> While the evidence of record does not support a conclusion that claimant's severe impairments prevent her from performing all work, the undersigned has given claimant the benefit of the doubt that such impairments impose some limitations upon her.  Specifically, the evidence regarding her

23

hypopituitarism, fatigue, obesity, low back pain, degenerative joint disease of the left knee, and asthma support a finding that she should be limited to sitting for 6 hours in [an] 8-hour day up to normal breaks but may have to sit more frequently. She is limited to lifting 20 pounds occasionally. She is limited to lifting 10 pounds frequently. Claimant is limited to pushing and pulling within the weight limitations provided. Furthermore, due to claimant[']s low back pain, degenerative joint disease of the left knee, obesity and fatigue, she is further restricted from climbing ropes, ladders, and scaffolds. Likewise, she is limited to performing postural activities only occasionally. Due to claimant's asthma-related symptoms, she should avoid concentrated exposure to dusts, gases, fumes, and poor ventilation. Given her history of depression and anxiety, claimant is limited to working in a stable environment, meaning that sudden and unexpected changes are not normal. Furthermore, claimant's mental impairments require her to avoid having more than casual interaction with the general public and or performing jobs requiring cooperative effort such as teamwork. Additionally, the undersigned has considered the effects of claimant's mental health impairments as well as her allegations of difficulty with memory and concentration in restricting claimant to the performance of simple, routine, and repetitive tasks. The undersigned finds that the residual functional capacity adequately accounts for any limitations imposed by her severe impairments.

[R. 45 (internal footnotes omitted).]

### *Analysis*

As an initial matter, the Court notes that it is the claimant's duty to produce evidence of functional limitations, not the ALJ's. *See Pass*, 65 F.3d at 1203 (citing *Hunter*, 993 F.2d at 35) (stating the applicant bears the burden of proof during the first four steps of the inquiry). Additionally, the RFC determination is one of several issues that "are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings." SSR 96-5p, 61 Fed. Reg. 34,471, at 34,472; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 n.8 ("A medical source opinion that an individual . . . has a

24

particular RFC . . . is an opinion on an issue reserved to the Commissioner.  Every such opinion must still be considered in adjudicating a disability claim; however, the adjudicator will not give any special significance to the opinion because of its source.").  Here, the ALJ's decision both summarizes and discusses the medical records, objective medical evidence, and non-medical records the ALJ considered in determining Plaintiff's functional limitations.  In addition to highlighting the substantial evidence that exists to support her RFC determination, the ALJ's review, discussion, and analysis also explains why she assessed Plaintiff with those particular limitations.  In sum, the ALJ's decision logically explains how she determined Plaintiff's RFC—a determination expressly reserved for the ALJ—and Plaintiff has failed to address how the ALJ's RFC assessment is contrary to any evidence of record.  Accordingly, the ALJ's decision with respect to the RFC assessment is supported by substantial evidence.

**Appeals Council Review**

In seeking review by the Appeals Council, Plaintiff submitted new evidence that included additional mental health records from Trimaine Brinkley, M.D., dated between April 18, 2011 and June 30, 2011.[9]  [R. 790–99.]  Plaintiff contends the new evidence presented to the Appeals Council would change the ALJ's decision because the ALJ discounted Plaintiff's complaints of disabling depression and anxiety based on her finding that Plaintiff's mental health symptoms improved over time, and the new evidence contradicts this finding.  [Doc. 18 at 27; Doc. 22 at 14.]

---

[9]The new evidence also included a letter from Plaintiff, a letter from endocrinologist P.K. Natrajan, M.D., and a printout from the website WedMD regarding hypopituarism.  [R. 802–08.]  Plaintiff has not referenced these exhibits in her arguments to this Court.

Even after the ALJ renders a decision, a claimant who has sought review from the Appeals Council may submit evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision.   20 C.F.R. § 404.968; *see also id.* § 404.970(b) (stating that the Appeals Council will consider new and material evidence). In *Meyer v. Astrue*, the Fourth Circuit held that

> the regulatory scheme does not require the Appeals Council to do anything more than   . . . "consider new and material evidence . . . in deciding whether to grant review." *Wilkins* [*v. Sec'y, Dep't of Health & Human Servs.*], 953 F.2d [93,] 95 [(4th Cir. 1991)]; *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006) (finding "nothing in the statutes or regulations" requires the Appeals Council to articulate its reasoning when "new evidence is submitted and the Appeals Council denies review"); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting contention that Appeals Council must "make its own finding" and "articulate its own assessment" as to new evidence when denying review); *Damato v. Sullivan*, 945 F.2d 982, 988–89 (7th Cir. 1992) (holding that "the Appeals Council may deny review without articulating its reasoning" even when new and material evidence is submitted to it).

662 F.3d 700, 706 (4th Cir. 2011) (footnote omitted).  However, the court went on to note,

> Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that "an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review." *Martinez*, 444 F.3d at 1207–08; *see also Damato*, 945 F.2d at 989 n.6 (noting that in "fairness to the party appealing the ALJ's decision, the Appeals Council should articulate its reasoning" when it rejects new material evidence and denies review).

*Id.*

The Fourth Circuit then observed that a lack of additional fact finding by the Appeals Council would not render judicial review impossible if the record contained an adequate

26

explanation of the Commissioner's decision. *Id.* at 707 (citation omitted). In such a case, a court could conclude that, even considering the new evidence, the ALJ's decision was supported by substantial evidence. *See id.* (citation omitted). On the other hand, if the newly presented evidence was not controverted by other record evidence, the new evidence could support finding that the ALJ's decision was not supported by substantial evidence. *See id.* (citation omitted). However, turning to the facts of the case before it, the Fourth Circuit noted the evidence was not one-sided, and the court "simply [could ]not determine whether substantial evidence support[ed] the ALJ's denial of benefits." *Id.* Specifically, as to the opinion of the claimant's treating physician submitted to the Appeals Council, "no fact finder ha[d] made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." *Id.* Consequently, the Fourth Circuit concluded the case must be remanded for further fact finding because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," a job a reviewing court "cannot undertake [] in the first instance." *Id.*

### *Summary of the New Evidence*

Plaintiff's complaints to Dr. Brinkley mainly consisted of stress related to her marriage. [R. 790, 793, 796, 797.] In May 2011, Plaintiff complained her mood was "up and down," and she reported feeling hopeless; decreased energy, concentration, and appetite; feelings of guilt; and passive suicidal ideation. [R. 795.] Plaintiff indicated these feelings had been present intermittently since 2006. [*Id.*] Plaintiff complained that her husband did not love her and that she felt she had to be perfect. [*Id.*] Dr. Brinkley

performed a mental status exam and diagnosed (1) major depressive disorder, moderate and (2) generalized anxiety disorder and assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 55.[10]  [R. 797.]

In June 2011, Dr. Brinkley noted that, although Plaintiff had started taking Celexa for depression and reported initial improvement, she began to experience worsening social difficulties and mood.  [R. 791.]  Dr. Brinkley also noted Plaintiff was forced to move back to her home with her husband, which was difficult for her.  [R. 790, 793.]  Dr. Brinkley reaffirmed the assessment of moderate major depressive disorder and generalized anxiety disorder.  [R. 790, 793.]

### Summary of the Evidence Before the ALJ

The evidence before the ALJ included reports by Plaintiff that she was

> feeling depressed in January 2005, March 2008, April 2008, August 2008, and September 2008.  She described having a loss of interest in daily activities and social withdrawal in June 2008, but in September 2008 she stated that she isolated herself from friends because she was self-conscious about her weight.  She stated she felt moody in October 2008.  Claimant reported having feelings of guilt, worthlessness, and hopelessness in June 2008, August 2008, May 2009, and September 2009.  In June 2008, she stated she had crying spells.  She consistently reported having marital difficulty throughout the relevant time period.  Claimant described having low motivation, low energy, and sleep disturbances in May 2009.  In June 2008, September 2008, and September 2009, she admitted having suicidal ideation but stated that she had no intent to commit suicide. Claimant also reported having anxiety in April 2008, August 2008, September 2008, and October 2008.  She reported having panic attacks in August 2008.

---

[10]A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., Text Revision 2000) [hereinafter DSM-IV-TR].

> Claimant's subjective reports to her providers indicate that her mental health symptoms improved over time. Claimant reported in May 2009 that she had made plans to go to an inpatient mental health facility, but in June 2009 she reported that she never went because she felt better. She stated in September 2009 that she was not interested in taking anti-depressant medication. In April 2010, claimant reported to Jonathan Simons, Ph.D., that she had been depressed but that her depression had resolved 6 weeks prior to her appointment.

[R. 39 (internal citations omitted).] The ALJ also noted the evidence showed that Plaintiff's

> primary care provider assessed her with depression in January 2005. In June 2008, consultative examiner, Dr. Jackson assessed claimant with depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified. Kathy Heustess, LISW-CP assessed claimant with depressive disorder not otherwise specified in September 2008. That same month, Dr. Simons assessed claimant with adjustment disorder with anxiety and depression. Psychiatrist Christine Lloyd diagnosed claimant with general anxiety and dysthymic disorder in October 2008. Dr. Tang assessed claimant with major depressive disorder and anxiety in September 2009 and stated that these conditions were likely exacerbated by hypothyroidism and other stressors such as her husband's illness and financial limitations.

[R. 40–41 (internal citations omitted).] The ALJ also noted Plaintiff's several GAF scores in the record, ranging from a low of 53 to a high of 75, with consistent scores at or above 60.[11]  [R. 41.] Upon considering the evidence of record, the ALJ concluded that findings regarding Plaintiff's mental status have been relatively benign.  [*Id.*]

---

[11]A GAF score of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV-TR at 34.  A GAF score of 71 to 80 indicates that, "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork." *Id.*

*Analysis*

Considering the ALJ's decision in light of the new evidence, the Court has failed to discern a basis for remanding this case for further fact finding because the new evidence is consistent with the evidence before the ALJ. *See Meyer*, 662 F.3d at 707 (remanding case for the fact finder—the ALJ—to reconcile the new evidence with conflicting and supporting evidence in the record). There is nothing in the new evidence that was not previously considered by the ALJ, and the new evidence does not contradict the ALJ's finding that Plaintiff's condition improved with treatment during the relevant time period. [R. 39 ("Claimant's subjective reports to her providers indicate that her mental health symptoms improved over time."), 790 ("The pt report states that her anxiety is 'pretty bad at home' and it improves when she is outside of the home."), 791 ("She was started on Celexa and she reported initial improvement. However, as she began to experience worsening social difficulties, she noted a worsening in her mood. . . . The pt's mood is directly affected by her interactions with her husband."), 793 ("She states that Celexa was helpful initially but she feels her mood is decreased since returning home.").] Further, the Court notes the ALJ found major depressive disorder and anxiety were two of Plaintiff's severe impairments. [R. 32.] The ALJ also considered and accounted for Plaintiff's mental impairments in the RFC assessment:

> Given her history of depression and anxiety, claimant is limited to working in a stable environment, meaning that sudden and unexpected changes are not normal. Furthermore, claimant's mental impairments require her to avoid having more than casual interaction with the general public and or performing jobs requiring cooperative effort such as teamwork. Additionally, the undersigned has considered the effects of claimant's mental health impairments as well as her allegations of difficulty with memory and concentration in restricting

> claimant to the performance of simple, routine, and repetitive tasks.[12]

[R. 45 (footnote added).]  Accordingly, the new evidence is consistent with the evidence before the ALJ, and the Court concludes the new evidence presented to the Appeals Council would not have changed the ALJ's opinion.  Thus, the ALJ's decision is supported by substantial evidence, even in light of the new evidence.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 18, 2013
Greenville, South Carolina

---

[12] The Court notes that several cases from within this District hold that RFC restrictions like those imposed by the ALJ in this case sufficiently account for a claimant's moderate difficulties in concentration, persistence, or pace.  *See, e.g.*, *Gibbs v. Astrue*, No. 9:09-1081-HFF-BM, 2010 WL 3585502, at *8 (D.S.C. Aug. 2, 2010) (holding that limiting the plaintiff to a low stress setting with no more than occasional decision making or changes in the work setting and no exposure to the general public sufficiently encompassed moderate difficulties in concentration, persistence, or pace), *report and recommendation adopted by* 2010 WL 3585673 (D.S.C. Sept. 13, 2010); *Smith v. Astrue*, No. 9:09-351-SB-BM, 2010 WL 3257738, at *4 (D.S.C. June 4, 2010) (finding no reversible error where ALJ found the plaintiff had moderate difficulties in maintaining concentration, persistence, or pace and limited the plaintiff to the performance of simple, routine tasks in a supervised environment with no required interaction with the public or team-type interaction with coworkers), *report and recommendation adopted by* 2010 WL 3257736 (D.S.C. Aug. 16, 2010); *see also Wood v. Barnhart*, No. 05-432 SLR, 2006 WL 2583097, at *11 (D. Del. Sept. 7, 2006) ("In restricting plaintiff to jobs with simple instructions, the court concludes that the A.L.J. adequately accounted for the moderate limitation in maintaining concentration, persistence or pace which was identified by both state agency physicians in their psychological evaluations of plaintiff and supported by plaintiff's medical records.").